UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HAROLD KOLTIN,
    Plaintiff,

    v.

CITY OF FALL RIVER, FALL RIVER
POLICE DEPARTMENT, WILLIAM
FLANAGAN, DANIEL RACINE, JOHN
DEMELLO, RICHARD SARAIVA, JAMES
COSTA, WENDELL BURKE, WARREN
FRANCIS, ALAN CORREIRO, KEVIN
DOLAN, JEFFREY RICHARD, GREGORY
BELL, ROGER DUFOUR, JOSEPH BISZKO,
FALL RIVER FIRE DEPARTMENT, BRISTOL
ELDER SERVICES, INC., NANCY MUNSON,
LISA KUROWSKI, NICOLE CHENEY,
PHILLIP VIERA, JOANN GETTINGS and
BRIAN GETTINGS,
    Defendants.

CIVIL ACTION NO.
14-13749-NMG

**REPORT AND RECOMMENDATION RE:
DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM
(DOCKET ENTRIES ## 12, 15 & 20)**

**September 1, 2015**

**BOWLER, U.S.M.J.**

Three motions to dismiss are pending before this court.

First, there is a motion to dismiss filed by defendants the City

of Fall River ("City"), Fall River Police Department ("FRPD"),

William Flanagan ("Flanagan"), John DeMello ("DeMello"), Richard

Saraiva ("Saraiva"), James Costa ("Costa"), Wendell Burke

("Burke"), Warren Francis ("Francis"), Alan Correiro

("Correiro"), Kevin Dolan ("Dolan"), Jeffrey Richard

("Richard"), Gregory Bell ("Bell"), Roger Dufour ("Dufour"),
Joseph Biszko ("Biszko") and the Fall River Fire Department
("FRFD") (collectively "defendants").  (Docket Entry # 12).
Second, there is a motion to dismiss filed by defendants Bristol
Elder Services, Inc. ("BES"), Nancy Munson ("Munson"), Lisa
Kurowski ("Kurowski") and Nicole Cheney ("Cheney") (collectively
"BES defendants").  (Docket Entry # 15).  Finally, there is a
motion to dismiss filed by defendants Brian Gettings ("Brian
Gettings") and Joann Gettings ("Joann Gettings") (collectively
"the Gettings").  (Docket Entry # 20).

PROCEDURAL BACKGROUND

In September 2014, plaintiff Harold Koltin ("plaintiff")
filed a complaint on behalf of his mother, Edith Koltin ("Edith
Koltin"), "in his capacity as Personal Representative" of her
estate.  (Docket Entry # 1).  The complaint sets out 18 counts
against 23 defendants.  (Docket Entry # 1).  Subsequently,
plaintiff voluntarily dismissed all counts asserted against
defendant Daniel Racine.  (Docket Entry # 46).  The remaining
counts are as follows:  (1) Count I for violations of 42 U.S.C.
1983 ("section 1983"); (2) Count II for violations of the
Massachusetts Civil Rights Act, Massachusetts General Laws
chapter 12, sections 11H and 11I ("MCRA"); (3) Count III for
violations of the Fourth Amendment by warrantless forced entry;
(4) Count IV for violations of the Fourth Amendment by

2

warrantless search and seizure; (5) Count V for wanton
destruction of property; (6) Count VI for conversion; (7) Count
VII for use of excessive force against a person over 60 years of
age; (8) Count VIII for willful and unreasonable conduct in
violation of constitutional rights; (9) Count IX for failure to
intervene; (10) Count X for trespass; (11) Count XI for lack of
proper supervision; (12) Count XII for attempted forced entry;
(13) Count XIII for slander; (14) Count XIV for libel; (15)
Count XV for defamation; (16) Count XVI for invasion of privacy;
(17) Count XVII for actions exceeding reasonable bounds,
infringing on plaintiff's constitutional rights and producing
serious injury and hastening and precipitating death; and (18)
Count XVIII for civil perjury.

    Plaintiff, represented by counsel, filed an opposition but
only addresses the section 1983 claim.  (Docket Entry # 51).  In
no uncertain terms, the opposition reads as follows:

> The plaintiff has filed an eighteen-count complaint against
> the named defendants.  Counts 1 and 2 of the complaint
> allege a civil rights violation pursuant to 42 U.S.C. §
> 1983.  The remaining counts allege specific conduct falling
> with the purview of § 1983.

(Docket Entry # 51).  The opposition concludes with the
statement that the allegations "amply support a finding that all
defendants violated Section 1983" and that "[d]ismissal is
therefore not appropriate."  (Docket Entry # 51).  Accordingly,
plaintiff waived any basis for opposing the arguments that do

not address a section 1983 claim made by defendants, the BES

defendants and the Gettings in their motions to dismiss.  See

Vallejo v. Santini-Padilla, 607 F.3d 1, 7 and n.4 (1st Cir. 2010)

("[p]laintiffs have not cited a single authority in support of

their assertion that their failure to timely oppose the motion

to dismiss did not constitute waiver" and noting that

"[p]laintiffs did not properly raise their arguments below");

see also Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44

(1st Cir. 2010) ("district court was 'free to disregard' the

state law argument that was not developed in Coons's brief").

## STANDARD OF REVIEW

Defendants each move to dismiss the complaint under

Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").  To survive a Rule

12(b)(6) motion to dismiss, the complaint must include factual

allegations that when taken as true demonstrate a plausible

claim to relief even if actual proof of the facts is improbable.

Bell Atlantic v. Twombly, 550 U.S. 544, 555-58 (2007).  Thus,

while "not equivalent to a probability requirement, the

plausibility standard asks for more than a sheer possibility

that a defendant has acted unlawfully."  Boroian v. Mueller, 616

F.3d 60, 65 (1st Cir. 2010) (internal quotation marks ommited).

"[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint . .

. has not show[n] that the pleader is entitled to relief."

4

Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) (internal quotation marks and citations omitted).

Taking the facts in the governing complaint as "true and read in a plaintiff's favor" even if seemingly incredible, the complaint "must state a plausible, not a merely conceivable, case for relief."  Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29-30 (1st Cir. 2010).  "[A]ccepting . . . all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Boroian v. Mueller, 616 F.3d at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).  Drawing reasonable inferences in plaintiff's favor but eschewing reliance on "'bald assertions, . . . unsubstantiated conclusions,'" Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009), and legal conclusions, see Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (rejecting unsupported conclusions or interpretations of law in reviewing Rule 12(b)(6) dismissal), the complaint sets out the following facts.

## FACTUAL BACKGROUND

On October 3, 2011, based on a "prank swatter" call by "Joann Gettings in collaboration with her husband," Brian Gettings, Kurowski, a BES supervisor, and Cheney, a BES

protective services worker, showed up unannounced and without
identification at the home of Edith Koltin, an 89 year old blind
woman.  (Docket Entry # 1).  The Gettings were "adjacent
neighbors" to Edith Koltin.  (Docket Entry # 1).  Saraiva and
Costa, two Fall River police officers, next arrived and "began
banging on the door and shouting."  (Docket Entry # 1).
Subsequently, the FRFD showed up and "per order of the police,"
namely, FRPD Lieutenant DeMello, "broke windows and gained
access into the house without a warrant."  (Docket Entry # 1).

The allegations made by the Gettings were false because
Edith Koltin's son and full-time caretaker, Theodore Koltin, had
not abandoned his mother.  There was food in the refrigerator,
the gas stove worked and the Gettings had seen Edith Koltin and
"her son in the backyard daily for the past several months."
(Docket Entry # 1).  Edith Koltin did not show signs of
dementia.  (Docket Entry # 1).  Saraiva and Costa, however,
attempted to involuntarily commit Edith Koltin to a facility for
the treatment of mentally ill persons under Massachusetts
General Laws chapter 123, section 12.[1]  (Docket Entry # 1).  In
fact, they tied "her to a chair as she screamed to leave her
alone."  (Docket Entry # 1).  She was then taken, still "tied to

---

[1]  The complaint summarily refers to Saraiva and Costa's attempt
to "section 12" Edith Koltin even though she did not exhibit
signs of dementia.  (Docket Entry # 1, pp. 3-4).

the chair, to the hospital." Saraiva and Costa then "trashed" the house. (Docket Entry # 1).

Meanwhile, Edith Koltin's son, Theodore Koltin, was arrested and "brutally beaten while in handcuffs." (Docket Entry # 1). He was then "imprisoned in a cell at the police station" overnight. (Docket Entry # 1). The following morning, "the Court" arraigned him and released him on his own recognizance. (Docket Entry # 1). Within hours of returning home, defendant Phillip Viera ("Viera"), a contractor hired by the City, showed up and started banging on the doors of the home. (Docket Entry # 1). Viera then went to the Gettings' home and telephoned the police. (Docket Entry # 1). Shortly thereafter, FRPD officers Burke, Francis, Correiro, Dolan and FRPD sergeants Richard and Bell arrived along with the City's Minimum Housing Director, Dufour, and the City's Director of Inspectional Services, Biszko. (Docket Entry # 1).

Burke and Francis proceeded to break down the front door and gain access to the home without a warrant. (Docket Entry # 1). They told Theodore Koltin they thought "he was demented," and then "leg-swept him onto the floor," handcuffed him, "and dragged him into the kitchen, where he was raised to the ceiling and slam-dropped onto the floor." (Docket Entry # 1). While on the floor, Burke tased Theodore Koltin six times. (Docket Entry # 1). The police then "destroyed" the home which, drawing

7

reasonable inferences, necessarily encompassed Edith Koltin's personal items and furniture. (Docket Entry # 1). Thereafter, "Biszko and Dufour declared the house unfit for human habitation." (Docket Entry # 1). They listed "the code violations as 'debris'" and "overgrown shrubbery." (Docket Entry # 1). Additionally, Biszko demanded that the violations be remedied immediately, but he would not let any family members back on the property. (Docket Entry # 1).

Theodore Koltin was taken to the hospital. (Docket Entry # 1). The hospital, however, "refused" to involuntarily commit him, stating there was nothing wrong with him. (Docket Entry # 1). Burke and Francis told the hospital staff that if they ever found Theodore Koltin on the property again "the same thing will happen." (Docket Entry # 1). Theodore Koltin "was diagnosed with cardiac problems," emotional trauma, massive hematomas and "sudden and sustained extremely elevated blood pressure." (Docket Entry # 1). Edith Koltin's "personal effects were stolen, destroyed, or otherwise rendered useless and scattered about the house." (Docket Entry # 1). She died on December 3, 2011, homeless after the events of October 3, 2011. (Docket Entry # 1). The house experienced "massive flooding and is now suspected by the City to be infested with toxic mold." (Docket Entry # 1).

8

Flanagan and the City have not responded to a chapter "258 Tort Claims Act letter" and BES and Munson have not responded to a chapter "93A letter." (Docket Entry # 1). "All criminal charges against Theodore" Koltin "were dismissed without [a] change of [a] 'not guilty' plea." (Docket Entry # 1).

DISCUSSION

I.  Defendants' Motion (Docket Entry # 12)

A.  Flanagan, Correiro, Francis, Burke, Dolan, Richard, Bell, Dufour and Biszko in their Official and Individual Capacities

As a preliminary matter, Flanagan, Correiro, Francis, Burke, Dolan, Richard, Bell, Dufour and Biszko contend that plaintiff failed to show they were involved in or had knowledge of the events pertaining to Edith Koltin. (Docket Entry # 13, p. 5). In addition, they submit that plaintiff only alleges claims against them regarding Theodore Koltin's arrest. (Docket Entry # 13, p. 5). Accordingly, these defendants argue that plaintiff has no standing to bring the claims for the alleged mistreatment of Theodore Koltin and, thus, all claims against them should be dismissed. (Docket Entry # 13, p. 5). Additionally, Dufour and Biszko argue that the only facts pertaining to them in the complaint are that they were present when the police showed up at the home on October 4, 2011, and they later declared the house unfit for human habitation. (Docket Entry # 1, p. 4). Dufour and Biszko argue that these

9

allegations have nothing to do with Edith Koltin and therefore
plaintiff has no standing to assert any of the claims against
them.  (Docket Entry # 13, p. 14).

The constitutional limit of standing in Article III
requires that the plaintiff "suffered or be imminently
threatened with a concrete and particularized 'injury in fact'
that is fairly traceable to" the defendant and "likely to be
redressed by a favorable judicial decision." Lexmark Int'l.,
Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1386
(2014).  Plaintiff, as the party invoking federal jurisdiction,
bears the burden to establish standing.  Blum v. Holder, 744
F.3d 790, 795 (1st Cir.) ("'party invoking federal jurisdiction
bears the burden of establishing' standing'"), cert. denied Blum
v. Holder, 135 S.Ct. 477 (2014).  Constitutional standing is
generally referred to as a three part "triad: injury, causation,
and redressability." Wilson v. HSBC Mortg. Services, Inc., 744
F.3d 1, 8 (1st Cir. 2014).  Injury in fact is one "[that is]
'concrete, particularized, and actual or imminent; fairly
traceable to the challenged action; and redressable by a
favorable ruling.'" Blum v. Holder, 744 F.3d at 796.
Additionally, standing has "a prudential component," which "has
various aspects, including a requirement that a party 'assert
his own legal rights and interests,' not those of third
parties." Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 637

(1st Cir. 2013) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).

The complaint sets out an incident that took place on October 3, 2011, involving injuries to Edith Koltin.  (Docket Entry # 1).  DeMello entered the house without a warrant and Saraiva and Costa tied her to a chair and she was taken to a hospital.  (Docket Entry # 1).  With respect to the incident on October 4, 2011, however, there is no indication that Edith Koltin was in the home at the time.  She nevertheless owned the home which "was again destroyed."  (Docket Entry # 1). Accordingly, the question is whether destroying Edith Koltin's home, including her furniture and personal effects, on October 4, 2011, is a redressable injury in fact, which would give plaintiff, as representative of his mother's estate, standing to seek relief against the defendants who were involved in the October 4, 2011 incident.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Lujan v. Defendants of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).  "In essence the question of standing is whether the litigant is entitled to have the court decide the

merits of the dispute or of particular issues." <u>Warth v.
Seldin</u>, 422 U.S. at 498.  In evaluating the existence, or lack
thereof, of an injury-in-fact for purposes of Article III
standing, the Supreme Court has held that, "The actual or
threatened injury required by Art. III may exist solely by
virtue of 'statutes creating legal rights, the invasion of which
creates standing . . ..'"  <u>Id.</u> at 500.

In the case at bar, the injury arises by virtue of the
constitutional, tort and negligence claims brought by plaintiff
as representative of his mother's estate.  The injury in fact to
Edith Koltin's furniture and personal effects caused by the
defendants who were present in the home on October 4, 2011,
satisfies "the minimal threshold of showing an injury in fact
for standing purposes."  <u>Hosea v. Langley</u>, 2006 WL 314454, at
*20 (S.D.Ala. Feb. 8, 2006) (section 1983 complaint against
police officers who stole, destroyed and burned plaintiff's
personal property sufficient to create standing).  Flanagan,
Correiro, Francis, Burke, Dolan, Richard, Bell, Dufour and
Biszko are therefore not dismissed based on Article III standing
because there is a redressable injury in fact to Edith Koltin on
October 4, 2011, when her house was destroyed even though she
was not present.

B.  <u>Service on Dufour</u>

Defendant Dufour seeks to dismiss all of the claims against him on the basis that plaintiff failed to effectuate service of process. (Docket Entry # 13, pp. 4-5). Rule 4(m) of the Federal Rules of Civil Procedure requires that service of a summons and complaint be made on a defendant within 120 days of filing the complaint. If service is not made within the 120 day period, the court "must dismiss the action without prejudice against that defendant." Fed.R.Civ.P. 4(m). Defendant Dufour raised the issue of service in the motion to dismiss thereby avoiding a waiver under Fed.R.Civ.P. 12(h)(1). The docket fails to reflect a return of service of the complaint and summons on defendant Dufour. Where, as here, the defendant challenges service, the plaintiff has "the burden of proving proper service." Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). Plaintiff does not address the issue. A dismissal of defendant Dufour without prejudice is therefore appropriate.

C. Section 1983 Violation (Count I)

The City, FRPD and FRFD seek to dismiss Count I on the ground that plaintiff failed to identify any policy or custom required to establish municipal liability. (Docket Entry # 13, pp. 6-7). Additionally, DeMello, Saraiva, Costa, Burke, Francis, Correiro, Dolan, Richard and Bell (collectively "defendant officers") as well as Flanagan, Biszko and Dufour

13

move to dismiss Count I in their official capacities because
they cannot be sued in their official capacities under section
1983. (Docket Entry # 13, pp. 5, 8). Finally, defendant
officers seek to dismiss Count I in their official and
individual capacities because they are protected under an
"'Emergency Aid' exception." (Docket Entry # 13, p. 6).
Plaintiff opposes dismissal. (Docket Entry # 51).

With respect to municipal liability, the City, FRPD and
FRFD seek dismissal of the section 1983 claim because plaintiff
failed to identify any policy or custom that contributed to the
violation of constitutional rights and therefore fails to meet
an essential element of the section 1983 claim. (Docket Entry #
13, pp. 6-7). Municipal liability under section 1983 is neither
vicarious nor based on respondeat superior. Monell v. Dep't of
Soc. Services of City of New York, 436 U.S. 658, 663 n.7 (1978);
Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 503
(1st Cir. 2012) (municipality cannot be sued under section 1983
"on a respondeat superior theory"); Estate of Bennett v.
Wainwright, 548 F.3d 155, 177 (1st Cir. 2008) ("municipal
liability is not vicarious"). Section 1983 only imposes
liability on local governments "for 'their *own* illegal acts.'"
Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (emphasis in
original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469,
479 (1986)).

14

In order to impose section 1983 liability on the City,
plaintiff must "identify a municipal 'policy' or 'custom' that
caused the plaintiff's injury."  Board of County Commissioners
of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997);
Connick v. Thompson, 131 S.Ct. at 1359 (plaintiffs "must prove
that 'action pursuant to official municipal policy' caused their
injury"); City of Canton, Ohio v. Harris, 489 U.S. 378, 385-87
(1989) (plaintiff must establish a direct link between the
municipal policy and the constitutional violation).  "Such
custom 'must be so well settled and widespread that the
policymaking officials of the municipality can be said to have
either actual or constructive knowledge of it yet did nothing to
end the practice.'"  Estate of Bennett v. Wainwright, 548 F.3d
at 177 (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st
Cir. 1989)).  A "policy" results from "the decisions of [the
municipality's] duly constituted legislative body or of those
officials whose acts may fairly be said to be those of the
municipality."  Board of County Commissioners of Bryan County,
Okla. v. Brown, 520 U.S. at 403-04 (citing Monell v. Dep't. of
Soc. Services of City of New York, 436 U.S. at 694).  An
official policy thus "includes the decisions of a government's
lawmakers, the acts of its policymaking officials, and practices
so persistent and widespread as to practically have the force of
law."  Connick v. Thompson, 131 S.Ct at 1359.

15

Here, plaintiff does not identify any municipal policy or custom in the complaint.  It is unclear exactly what facts in the complaint would provide a plausible basis of municipal liability and plaintiff does not attempt to clarify this in his opposition.  (Docket Entry # 51).  The complaint alleges no facts suggestive of a custom or policy of the City, FRFD or FRPD to engage in warrantless forced entries, destruction of property and/or false arrests.

In addition to identifying a municipal policy or custom, the "policy or custom must have caused the depravation of the plaintiff's constitutional rights and the municipality must have the requisite level of culpability: deliberate indifference to the particular constitutional right of the plaintiff."  Crete v. City of Lowell, 418 F.3d 54, 66 (1st Cir. 2005); see Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005) (plaintiff must show that the City is responsible for the violation, a level of fault that "is generally labeled" as one of "'deliberate indifference'"); see also Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. at 404 ("plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link").  In other words, "A municipality can be liable under § 1983 for failing to [train, supervise and discipline] . . . if that failure causes a constitutional

16

violation or injury and 'amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005) (quoting City of Canton, Ohio v. Harris, 489 U.S. at 388).

In the case at bar, the complaint fails to identify any policy or custom of the City, FRFD or FRPD that with deliberate indifference underwrote the alleged violations of plaintiff's rights.  The facts do not state or reasonably infer a municipal policy or custom or the requisite causal link between that policy or custom and the constitutional violation.  Finally, there is an absence of facts alleging or inferring deliberate indifference.  Defendants' arguments are therefore well taken and the section 1983 claims against the City, FRFD and FRPD should be dismissed.

Defendant officers, Flanagan, Biszko and Dufour next argue that Count I should be dismissed because they cannot be sued in their official capacities under section 1983.  (Docket Entry # 13, pp. 5, 8).  When an officer is sued in his or her official capacity it is essentially a suit against the government entity for which he or she works.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Thus, "[i]t is *not* a suit against the official personally, for the real party in interest is the entity." Id. (emphasis in original).  In the case at bar, defendant officers,

Flanagan, Biszko and Dufour are correct that they cannot be sued in their official capacities under section 1983 because a suit against them in their official capacities is a suit against the City.  Count I against defendant officers, Flanagan, Biszko and Dufour named in their official capacities is therefore subject to dismissal.

Defendant officers additionally argue that they were acting upon information from BES indicating that Edith Koltin was neglected and therefore they did not need a warrant under the emergency aid exception to a section 1983 claim to enter the home.  (Docket Entry # 13, p. 6).  Accordingly, they seek a dismissal in both their individual and official capacities. (Docket Entry # 13, pp. 6-7).

The emergency aid exception to the Fourth Amendment's warrant requirement sets out that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Michigan v. Fisher, 558 U.S. 45, 47 (2009) (internal quotation marks omitted).  Courts examine the objective circumstances for which the police officers believe there is a person in a residence in need of immediate aid, rather than the "subjective intent or the seriousness of any crime they are investigating." Michigan v. Fisher, 558 U.S. at 47 (citing Brigham City, Utah v. Stuart, 547 U.S. 398, 404-05 (2006)).  In

18

the seminal emergency aid exception case, <u>Brigham City, Utah v.</u>
<u>Stuart</u>, 547 U.S. 398 (2006), police officers responded to a
noise complaint and heard an altercation occurring as they
approached the house.  <u>Id.</u> at 406.  They then watched through a
window as a juvenile broke free from the adults restraining him
and punched another adult in the face.  <u>Id.</u>  "Under these
circumstances, . . . it [was] 'plainly reasonable' for the
officers to enter the house and quell the violence, for they had
'an objectively reasonable basis for believing both that the
injured adult might need help and that the violence . . . was
just beginning.'"  <u>Michigan v. Fisher</u>, 558 U.S. at 48 (citing
<u>Brigham City, Utah v. Stuart</u>, 547 U.S. at 406).

"[T]he burden rests with the Commonwealth to demonstrate
that a warrantless search, considering the totality of the
circumstances, fits within the emergency aid exception to the
warrant requirement."  <u>Commonwealth v. Peters</u>, 905 N.E.2d 1111,
1116 (Mass. 2009).  In the case at bar, taking the facts in the
light most favorable to plaintiff, defendant officers simply
argue that they were acting in response to the information from
BES.  The complaint, however, contains no facts to support the
assertion that they were acting in response to information from
BES.[2]  With the underlying burden of proof resting with defendant

---

[2]  This court expresses no opinion as to whether such conduct, if
true, would fall within the emergency aid exception.

officers and given the absence of facts in the complaint to
demonstrate they fit within the exception, dismissal of the
section 1983 claim under the emergency aid exception is not
warranted.

    D.  <u>MCRA Claim (Count II)</u>

    Defendants move to dismiss the City, FRFD and FRPD because
neither a municipality nor its agencies is a "person" under the
MCRA.  (Docket Entry # 13, pp. 8-9).  Defendant officers,
Flanagan, Biszko and Dufour similarly argue that they are not
"persons" under the MCRA and therefore cannot be held liable in
their official capacities under the MCRA.  (Docket Entry # 13,
p. 9).

    Addressing the arguments seriatim, the MCRA provides a
cause of action "[w]henever any *person* or *persons*, whether or
not acting under color of law, interfere by threats,
intimidation, or coercion, . . . with the exercise or enjoyment
. . . of rights secured by the constitution or laws of the
United States."  Mass. Gen. L. ch. 12, § 11H (emphasis added).
The MCRA allows "[a]ny person whose exercise or enjoyment of
rights . . . has been interfered with, . . . as described in
section 11H, [to] may institute and prosecute in his own name
and on his own behalf a civil action for injunctive and other
appropriate equitable relief . . .."  Mass. Gen. L. ch. 12, §
11I.  As correctly pointed out by the City, FRPD and FRFD, a

municipality is not a "person" within the meaning of the MCRA.
Howcroft v. City of Peabody, 747 N.E.2d 729, 744 (Mass.App.Ct.
2001) (affirming summary judgment on plaintiff's state civil
rights claim against City of Peabody because municipality is not
a "person" covered by MCRA); see Kelley v. LaForce, 288 F.3d 1,
11 n.9 (1st Cir. 2002).  Because the Commonwealth, including its
agencies, is not a "person" subject to suit under the MCRA,
Williams v. O'Brien, 936 N.E.2d 1, 4 (2010), the MCRA claim
against the City, FRFD and FRPD is therefore subject to
dismissal.

     Defendant officers, Flanagan, Biszko and Dufour argue that
they are not "persons" within the meaning of the MCRA and are
therefore exempt from liability in their official capacities.
(Docket Entry # 13, p. 9).  It is well settled that police
officers and town officials in their official capacities are not
"persons" under the MCRA and cannot be held liable.  See Damon
v. Hukowicz, 964 F.Supp.2d 120, 150 (D.Mass. 2013); Howcroft v.
Peabody, 747 N.E.2d at 744-45 (municipality and individual
defendants in their official capacities are not "persons" under
MCRA).  Thus, Count II is likewise subject to dismissal as to
defendant officers, Flanagan, Biszko and Dufour in their
official capacities.

     E.  Counts III, IV, VII, VIII and XVII

Defendants next contend that Count III (captioned as a "Violation of Fourth Amendment: Warrantless Forced Entry"), Count IV (captioned as a "Violation of Fourth Amendment: Warrantless Search and Seizure"), Count VII (captioned as "Use of Excessive Force Against a Person Over 60 Years of Age"), Count VIII (captioned as "Willful and Unreasonable Conduct in Violation of Constitutional Rights") and Count XVII (captioned as "Actions Exceeding Reasonable Bounds, Infringing on Plaintiff's Constitutional Rights and Producing Serious Injury and Hastening and Precipitating Death") do not allege any facts as to the named defendants or state any cause of action that is not already encompassed in Counts I and II. (Docket Entry # 13, p. 9). Except for the captions, the foregoing counts simply "re-allege[] and re-incorporate[] by reference" the prior paragraphs in the complaint. Defendants therefore argue that these counts are duplicative of Counts I and II. (Docket Entry # 13, p. 9).

As to counts III and IV for violations of the Fourth Amendment, Count VIII for violations of constitutional rights and Count XVII for infringing on plaintiff's constitutional rights, "a plaintiff may not pursue a direct constitutional action where section 1983 provides adequate statutory relief." Ponte v. Rodriques, 1987 WL 13245, at *3 (D.Mass. June 15, 1987) (collecting cases). The court in Ponte therefore dismissed the

direct constitutional claims under the First, Fourth, Fifth and Fourteenth Amendments in various counts in light of the statutory remedy under section 1983 set out in a separate count. Id. at *3-4.  Other courts adhere to the same analysis.  See Priolo v. Town of Kingston, Mass., 2011 WL 565626, at *2 n.2 (D.Mass. Feb. 9, 2011) ("Count IV attempts to assert a claim directly under the Equal Protection Clause" and is therefore "duplicative of the one more properly brought in Count V under [section 1983]"); Wilson v. Moreau, 440 F.Supp.2d 81, 92 (D.R.I. 2006) (where plaintiff brings section 1983 claim, "then the same claim brought directly under the Constitution is 'duplicative, and therefore frivolous'").  As explained by the court in Amiro:

> Section 1983 affords the plaintiff a full and effective statutory remedy . . . for any constitutional violations that can be established, and it would be a redundant and wasteful use of this Court's resources to permit the adjudication of both direct constitutional and Section 1983 claims where the latter wholly subsume[s] the former.

Amiro v. Roderiques, 1987 WL 6985, at *2 (D.Mass. Jan. 21, 1987); see South Middlesex Opportunity Council, Inc. v. Town of Framingham, 2008 WL 4595369, at *18 (D.Mass. Sept. 30, 2008) (citing Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997)).

Here too, the Fourth Amendment claims in counts III and IV duplicate the section 1983 claim in Count I.  Similarly, Count VIII for "conduct in violation of constitutional rights" and

Count XVII for actions infringing plaintiff's constitutional rights base liability on violations of constitutional rights. As such, they are duplicative of the section 1983 claim in Count I.  Counts III, IV, VIII and XVII are subject to dismissal against the City, FRPD, FRFD, defendant officers, Flanagan, Biszko, Dufour, i.e. defendants, as duplicative of Count I.

Turning to Count VII, the basis of civil liability is not apparent.  Massachusetts law makes it a crime to commit an "assault and battery upon a person sixty years or older by means of a dangerous weapon."  Mass. Gen. L. ch. 265, § 15A.  As framed, however, the count does not allege a constitutional violation and, accordingly, defendants' argument that it duplicates the section 1983 or MCRA claims does not provide a basis to dismiss Count VII.

F.   Intentional Tort Claims:  Counts V, VI and X

The City, FRPD and FRFD argue that Count V (wanton destruction of property), Count VI (conversion) and Count X (trespass) should be dismissed because the Massachusetts Tort Claims Act ("MTCA"), Massachusetts General Laws chapter 258, section 10(c) ("section 10(c)"), exempts public employers from liability for their actions arising from an intentional tort. (Docket Entry # 13, p. 10).  They also submit that Flanagan, as a mayor, falls under the definition of a public employer. (Docket Entry # 13, p. 10).  Defendant officers, Flanagan,

24

Biszko and Dufour in their official capacities move to dismiss these counts because the MTCA official capacity claims against them are actually claims against their public employers. (Docket Entry # 13, p. 10).

Section two of chapter 258 provides that, "Public employers shall be liable for injury . . . or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. L. ch. 258, § 2.  Section 10(c) of chapter 258, however, expressly excludes from the reach of chapter 258 "any claim arising out of an intentional tort, including assault, battery . . . [and] intentional mental distress."  Mass. Gen. L. ch. 258, § 10(c).

Moreover, the section lists specific intentional torts and the word "including" indicates that the list is not all inclusive and that any intentional tort is protected by section 10(c).  See Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 835 (Mass.App.Ct. 2012).  Thus, while section 10(c) does not bar claims sounding in negligence, "governmental liability" does not attach to "'any claim arising out of an intentional tort.'" Ortiz v. County of Hampden, 449 N.E.2d 1227, 1228 (Mass.App.Ct. 1983).  For example, the court in Martini v. City of Pittsfield, upheld dismissal of plaintiff's intentional tort claim for intentional trespass as against a public employer.  Martini v.

25

City of Pittsfield, 2015 WL 1476768, at *9 (D.Mass. March 31, 2015).   The intentional torts of conversion and wanton destruction of property are also barred by section 10(c) of the MTCA.   See, e.g., Mason v. Massachusetts Dep't of Environmental Protection, 774 F.Supp.2d 349, 356 (D.Mass. 2011) (conversion claim barred by MTCA because "Commonwealth cannot be held liable for any claim arising out of an intentional tort"); Atteridge v. Department of Correction, 2008 WL 1914942, at *3 (Mass.App.Ct. April 30, 2008) (Commonwealth is exempt under MTCA, section 10(c), for "destruction of an inmate's property").

The City, FRPD and FRFD are also correct in contending that under Massachusetts General Laws chapter 258, section one, the City, FRPD and FRFD are public employers.[3]  See Damon v. Hukowicz, 964 F.Supp.2d at 136 ("Hadley Police Department falls within the definition of 'public employer'"); Bradston Associates, LLC v. Rouse, 2002 WL 31421755, at *5 (Mass.Super. Oct. 8, 2002) (sheriff's department was public employer).   A mayor, however, is not a public employer under Massachusetts General Laws chapter 258, section one, but rather an "[e]xecutive officer of a public employer."   Mass. Gen. L. ch. 258, § 1.   The statute further defines a "public employee" as

---

[3]  The statute defines a "public employer" as "the commonwealth and any country, city, town, . . . and any department . . .." Mass. Gen. L. ch. 258, § 1.

"elected or appointed, *officers* or employees of any public employer . . .." Mass. Gen. L. ch. 258, § 1 (emphasis added). Accordingly, Flanagan is not a public employer under the statute but rather an elected or appointed executive officer who also falls within the broad language of the statute's definition of a public employee. See generally Filippone v. Mayor of Newton, 467 N.E.2d 182, 186-87 (Mass. 1984) (addressing indemnity by public employer, the City of Newton, of the Mayor under Mass. Gen. L. ch. 258, § 9).

The facts in the complaint depict intentional conduct. The complaint alleges that FRFD "broke windows and gained access into the house." (Docket Entry # 1, p. 3). Saraiva and Costa tied Edith Koltin to a chair as they attempted to involuntarily commit her. (Docket Entry # 1, pp. 3-4). They then "trashed" the house, which was later declared unfit for human habitation by Biszko and Dufour. (Docket Entry # 1, p. 4). Counts V, VI and X thus set out claims arising out of intentional torts within the meaning of section 10(c). Accordingly, because the MTCA does not waive sovereign immunity for intentional torts, Mass. Gen. L. ch. 258, § 10(c), counts V, VI and X are subject to dismissal as to the City, FRFD and FRPD.[4]

---

[4]  In the alternative as to Count X, plaintiff's failure to oppose the argument waives any contention that the count sets out a claim for negligent trespass.

Turning to the liability of defendant officers, Flanagan, Biszko and Dufour in their official capacities, the MTCA "creates 'a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment,'" with the exception of "intentional torts." Luthy v. Proulx, 464 F.Supp.2d 69, 76 (D.Mass. 2006).  The statute does not protect public employees in their individual capacities from liability for their intentional torts.  Spring v. Geriatric Authority of Holyoke, 475 N.E.2d 727, 734, n.9 (Mass. 1985).  Even if the intentional torts were committed within the scope of their employment, public "employees may be personally liable." Id.

That said, "To avoid a State's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual capacity and not his official capacity." Howcroft v. City of Peabody, 747 N.E.2d at 745 (citing O'Malley v. Sheriff of Worcester County, 612 N.E.2d 641, 648 n.13 (Mass. 1993)); see Damon v. Hukowicz, 964 F.Supp.2d at 136 ("the official-capacity claims against Kuc and Mason are actually claims against the department itself, . . . and, thus, are barred by the MTCA") (citation omitted); Saltzman v. Town of Hanson, 935 F.Supp.2d 328, 350 (D.Mass. 2013) ("an individual acting in his or her official capacity as a Town employee cannot be held liable for an intentional tort claim").  Thus, counts V, VI and X are

28

subject to dismissal as to defendant officers, Flanagan, Biszko and Dufour in their official capacities.

G.   <u>Counts IX and XI</u>

Defendants next move to dismiss the claims in Count IX (failure to intervene) against the City, FRPD, Flanagan and defendant officers in their official capacities as well as the claims in Count XI (lack of proper supervision) against the City, FRPD, FRFD, Flanagan, Dufour and Biszko in their official capacities for a number of reasons. (Docket Entry # 13, pp. 10-12). Initially, they submit that because both counts present "causes of action based on a negligence theory," the City, FRPD, FRFD and Flanagan, as public employers, are entitled to sovereign immunity. (Docket Entry # 13, pp. 10-11). In addition, the City, FRFD, FRPD and Flanagan argue that plaintiff does not satisfy the presentment requirements of the MTCA. (Docket Entry # 13, p. 11). Alternatively, they maintain they are exempt from liability under Massachusetts General Laws chapter 258 ("chapter 258"), section 10(b) ("section 10(b)"), because they or the defendant officers as public employees were performing a discretionary function or duty. (Docket Entry # 13, pp. 11-12). Similarly, defendant officers, Flanagan and, with respect to Count XI, also Biszko and Dufour, argue they are exempt from liability in their official capacities under section 10(b). (Docket Entry # 13, pp. 11-12).

Turning to the first argument, with respect to the City, FRPD and FRFD, the MTCA waives "the Commonwealth of Massachusetts's sovereign immunity to suit (which extended to municipalities), but only in the instances allowed by the statute." Martini v. City of Pittsfield, 2015 WL 1476768, at *13.  As explained in part I(F), the statute does not abolish sovereign immunity with respect to intentional torts, Mass. Gen. L. ch. 258, § 10(c), but does allow liability against the public employer for negligent conduct.  See id. ("the MTCA requires some negligent or wrongful conduct for a public employer to be held liable").  Furthermore, although a municipality may not be liable for claims arising out of public employees' intentional torts, it may be found liable for claims arising out of its own negligence.  See Chaabouni v. City of Boston, 133 F.Supp.2d 93, 98 (D.Mass. 2001) (negligent failure to train and supervise claims against the city based upon intentional torts of employees was not barred by section 10(c)); Sheehy v. Town of Plymouth, 948 F.Supp. 119, 123-124 (D.Mass. 1996) ("it can be said that earlier negligence does not 'arise out of' a subsequent intentional tort").

Accordingly, defendants' argument that "plaintiff is unable to bring" the "causes of action based on a negligence theory" in counts IX and XI against the City, FRPD and FRFD as public employers (Docket Entry # 13, pp. 10-11) is without merit.  In

30

fact, negligence claims are precisely the type of claims for which the MTCA waives sovereign immunity.  See Audette v. Commonwealth, 829 N.E.2d 248, 256 (Mass.App.Ct. 2005) (Commonwealth "waived sovereign immunity for certain tort actions against it pursuant to the [MTCA], and an action for ordinary or gross negligence is permitted").

Defendants next argue that plaintiff cannot recover for personal injuries against the City, FRPD, FRFD and Flanagan, as public employers, unless he meets the presentment requirements in section four of chapter 258.  Defendants submit that plaintiff asserts he sent a presentment letter to the City but fails to allege in the complaint "when, how, and to whom he made such [a] presentment" or attach a copy of the letter to the complaint.  (Docket Entry # 13, p. 11).  Thus, they argue he fails to establish that he effectuated presentment and therefore the public employers or entities, i.e., the City, FRFD, FRPD and Flanagan, should be dismissed.  (Docket Entry # 13, pp. 10-12).

To bring a claim under section two of the MTCA, a plaintiff must meet the statute's presentment requirement.  See Mass. Gen. L. ch. 258, § 4.  Section four states that, "A civil action shall not be instituted against a public employer . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employer . . . and such claim shall have been finally denied by such executive officer

31

in writing."  Mass. Gen. L. ch. 258, § 4.  Thus, "proper
presentment of a claim is a condition precedent to bringing suit
under the Tort Claims Act" which "serves important public
purposes, including ensuring that the responsible public
officials receives [sic] timely notice of claims in order to
investigate their validity, settle valid claims, avoid payment
of nonmeritorious claims, and to take steps to ensure that
similar claims will not be brought in the future."  Morales v.
Desmarais, 2013 WL 3208610, at *2 (D.Mass. June 21, 2013).

A presentment challenge may take three forms:  timeliness;
proper identification of the official notified; and adequacy of
the identification of the nature of the claim and the legal
basis of the alleged liability.  Morales v. Desmarais, 2013 WL
3208610, at *2.  While the first two forms of a challenge have
an "unbending rule" of "strict compliance," the third form
addresses "the content of the presentment" and applies the rule
more flexibly.  Koran v. Weaver, 482 F.Supp.2d 165, 169-70
(D.Mass. 2007).  The test for the content of the presentment
requires that a plaintiff's presentment letter "should be
precise in identifying the legal basis of a plaintiff's claim"
and "not so obscure that educated public officials should find
themselves baffled or misled with respect to his assertion of a
claim."  Gilmore v. Commonwealth, 632 N.E.2d 838, 840 (Mass.
1994); see Koran v. Weaver, 482 F.Supp.2d at 170.

Here, as stated in the complaint, plaintiff "sent" or mailed the presentment letter, but the record fails to include a copy of the letter.  (Docket Entry # 1, p. 5).  The complaint additionally states that Flanagan and the City failed to respond to the letter in a timely manner.  (Docket Entry # 1, p. 5). Although the record does not allow an assessment of the content of the letter, a failure to plead and reference presentment in a complaint is not necessarily fatal to an MTCA claim.  See Doe v. Fournier, 851 F.Supp.2d 207, 223-224 (D.Mass. 2012) (rejecting argument to dismiss MTCA claim because the complaint did not plead presentment).  As stated by the court in Martini, "Plaintiffs are correct that they need not allege compliance with the presentment requirement in their complaint."  Martini v. City of Pittsfield, 2015 WL 1476768, at *9; see also Blair v. City of Worcester, 522 F.3d 105, 110 n.6 (1st Cir. 2008). Moreover, defendants have burden to establish lack of presentment.  Doe v. Fournier, 851 F.Supp.2d at 224 ("[d]efendants bear the burden of establishing that presentment was not made").  Accordingly, at this stage of the proceeding, the complaint's mere failure to describe how presentment was effectuated does not mandate a dismissal under Rule 12(b)(6) of the MTCA claim in counts IX and XI against the City, FRPD, FRFD and Flanagan.

33

Additionally, defendants argue that the City, FRPD, FRFD,
Flanagan, as public employers, as well as defendant officers,
Biszko and Dufour, as public employees, are exempt from
liability under section 10(b) or, in the alternative, under
section 10(c).  (Docket Entry # 13, p. 12).  Section 10(b)
excludes "any claim based upon the exercise or performance or
the failure to exercise or perform a discretionary function or
duty on the part of a public employer or public employee, acting
within the scope of his . . . employment, whether or not the
discretion involved is abused" from liability under the MTCA.
Mass. Gen. L. ch. 258, § 10(b).  The SJC adheres to "a two step
analysis for application of the discretionary function
exception: (1) whether the governmental actor had any discretion
at all as to what course of conduct to follow, and, if so, (2)
whether the discretion that the actor had is that kind of
discretion for which § 10(b) provides immunity from liability."
Crete v. City of Lowell, 418 F.3d 54, 60 (1st Cir. 2005) (citing
Greenwood v. Town of Easton, 828 N.E.2d 945, 948 (Mass. 2005)).
The SJC in Sena v. Commonwealth, 629 N.E.2d 986 (Mass. 1994),
held that, "the conduct of law enforcement officials in
investigating potentially criminal conduct and in seeking
warrants for the arrest of those whom they investigate are
discretionary functions and therefore fall within the exception
in § 10(b)."  Id. at 990.  In arriving at this holding, the Sena

34

court "recognize[d], of course, that certain aspects of the investigatory process may not be characterized as discretionary for purposes of the discretionary functions exception.  For example, where the conduct of a defendant police officer in investigating a crime or in seeking a warrant violates officially established departmental procedures, that conduct likely would not be protected."  Id. at 990 n.5; see Rivera v. City of Worcester, 2015 WL 685800, at *6 (D.Mass. Feb. 18, 2015).

The complaint does not specifically identify the conduct that constitutes a lack of proper supervision or a failure to intervene.  Nevertheless, drawing reasonable inferences, plaintiff is likely referring to the section 12 commitment of Edith Koltin, the forced entry into her home, and the trashing or destruction of her furniture and personal effects.

As set out in the complaint, FRPD and FRFD officials arrived at the house based only on the "prank swatter call." Edith Koltin showed no signs of dementia and there was ample food in the refrigerator.  Various defendants nevertheless entered the home without a warrant and destroyed her personal effects and furniture.  Because the facts viewed in plaintiff's favor unerringly do not justify the conduct, it is plausible that such reckless conduct leaves little room for discretion. Applying the Rule 12(b)(6) standard, therefore, the City, FRPD,

FRFD, Flanagan, defendant officers, Biszko and Dufour are not dismissed based on the discretionary function exception in section 10(b).

As a final matter, the City, FRFD, FRPD, Flanagan, defendant officers, Biszko and Dufour cite to section 10(c) as a basis to dismiss Count IX and/or Count XI.  The passing and singular reference to "section 10(c)" in their brief with respect to counts IX and XI (Docket Entry # 13, p. 12) does not adequately develop an argument to dismiss these counts.  The "argument" based on section 10(c) to dismiss counts IX and XI is therefore waived.  See Vallejo v. Santini-Padilla, 607 F.3d at 7 & n.4; see also Coons v. Industrial Knife Co., Inc., 620 F.3d at 44.  Accordingly, counts IX and XI are not subject to dismissal against the City, FRFD, FRPD, Flanagan, defendant officers, Biszko and Dufour under either section 10(b) or section 10(c).

H.   Invasion of Privacy (Count XVI)

As to Count XVI, the invasion of privacy claim, the City, FRFD, FRPD, Flanagan,[5] defendant officers, Dufour and Biszko move to dismiss the claim in their individual and official capacities.  (Docket Entry # 13, pp. 12-13).  Citing Spring v. Geriatric Authority of Holyoke, 475 N.E.2d 727 (Mass. 1985), defendants argue that plaintiff has no standing to bring the

---

[5]  The invasion of privacy claim in the complaint is not brought against Flanagan.

claim on behalf of Edith Koltin because "the only proper
plaintiff is [the] one whose privacy was actually invaded."
(Docket Entry # 13, p. 12).  In the alternative, defendants
assert that section 10(c) exempts public employers from all
liability for intentional torts and the municipal officers from
liability in their official capacities.  (Docket Entry # 13, p.
13).

As stated by the Massachusetts Supreme Judicial Court
("SJC") in Spring v. Geriatric Authority of Holyoke, where an
invasion of privacy claim exists, "such an action does not
survive the death of the injured party."  Spring v. Geriatric
Authority of Holyoke, 475 N.E.2d at 735 n.10 (dicta); see Pine
v. Rust, 535 N.E.2d 1247, 1250 (Mass. 1989).  Likewise, the
Restatement (Second) of Torts provides that, "Except for the
appropriation of one's name or likeness, an action for invasion
of privacy can be maintained only by a living individual whose
privacy is invaded."  Restatement (Second) of Torts, § 652I
(1977).  The SJC relies on the Restatement (Second) of Torts in
formulating the contours of a statutory invasion of privacy
claim.[6]  See Ayash v. Dana-Farber Cancer Institute, 822 N.E.2d

---

[6]  The complaint does not cite to the applicable statute,
Massachusetts General Laws chapter 214 ("chapter 214"), section
1B, which provides a private right of action for an invasion of
privacy.  See generally Schlesinger v. Merrill Lynch, Pierce,
Fenner and Smith, Inc., 567 N.E.2d 912, 913-915 (Mass. 1991).
Plaintiff does not address the invasion of privacy claim in

667, 682 (Mass. 2005) (citing <u>Restatement (Second) of Torts</u> §

652D to define an actionable right to privacy under chapter 214,

section 1B).  Accordingly, plaintiff cannot bring this claim on

behalf of his mother.

In the alternative, section 10(c), as previously discussed,

excludes intentional torts against public employers and against

public employees in their official capacities from the MTCA's

waiver of sovereign immunity.  <u>See</u> <u>Haney v. City of Boston</u>, 2012

WL 3144816, at *2 (Mass.Super. July 30, 2012) (MTCA excepts

intentional torts from its waiver of sovereign immunity).

Accordingly, the invasion of privacy claim (Count XVI) against

the City, FRFD, FRPD, Flanagan, defendant officers, Dufour and

Biszko is subject to dismissal.

I.  <u>Perjury (Count XVIII)</u>

Defendants next seek to dismiss the perjury claim in Count

XVIII against Saraiva, Costa and Burke both individually and

officially because there are no factual allegations to support

the claim and "perjury is not a proper cause of action."[7]

(Docket Entry # 13, p. 14).

_____

opposing the motions to dismiss.  Absent further guidance from
plaintiff, <u>see also</u> <u>Spencer v. Roche</u>, 659 F.3d 142, 150 n.6 (1st
Cir. 2011) ("Massachusetts has never recognized" common law tort
for invasion of privacy), this court construes Count XVI as
setting out a statutory invasion of privacy claim under section
1B of chapter 214.
[7]  Plaintiff brings the perjury claim against Saraiva, Costa,
Burke, Cheney, BES and the Gettings.

Perjury is a crime in the state of Massachusetts.  Mass. Gen. L. ch. 268, § 1.  "Perjury," however, "is not a civil cause of action."  Brothers v. Lipp, 2005 WL 955047, *1 n.3 (Mass.App.Ct. 2005); see Phelps v. Stearns, 70 Mass. 105, 105 (1855) ("[n]o civil action lies for perjury, except in cases in which it is expressly given by statute").  Accordingly, Count XVIII is subject to dismissal against Saraiva, Costa and Burke in both their individual and official capacities.

J.  Claims Against Saraiva and Costa Individually

Defendants Saraiva and Costa contend they are protected from liability under Massachusetts General Laws chapter 123, section 22 ("section 22").  (Docket Entry # 13, p. 15). Alternatively, they argue that the common law doctrine of qualified immunity provides a basis to dismiss all of the counts against them.  (Docket Entry # 13, pp. 15-17).  Counts I, II, V, VI, IX and X remain against Saraiva and Costa in their individual capacities.

Section 12 ("section 12") of chapter 123 provides that, "[A] police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain such person and apply for the hospitalization of such person . . .."  Mass. Gen. L. ch. 123, § 12(a).  Section 22 of chapter 123 unambiguously states that, "[P]olice officers . . . *shall* be immune from civil suits for

39

damages for *restraining*, transporting, applying for the admission of or admitting any person to a facility . . . [if the] police officer . . . acts pursuant to this chapter." Mass. Gen. L. ch. 123, § 22 (emphasis and brackets added).

Statutory interpretation "always starts with the language of the statute itself." Matamoros v. Starbucks Corp., 699 F.3d 129, 134 (1st Cir. 2012) (interpreting Massachusetts law). Typically, "the ordinary meaning of the statutory language" applies. Id. "[R]esort to extrinsic aids to statutory construction (such as legislative history)" is appropriate "only when the wording of the statute is freighted with ambiguity or leads to an unreasonable result." Id. Section 22 states in mandatory language that police officers "shall be immune from civil suits" for restraining, transporting or applying for hospitalization of a person to "a facility or the Bridgewater state hospital."[8] Mass. Gen. L. ch. 123, § 22; see Barclay v. DeVeau, 415 N.E.2d 239, 243 (Mass.App.Ct. 1981) ("shall" indicates a mandatory intent); Wells v. Monarch Capital Corp., 1996 WL 728125, at *19 (D.Mass. Oct. 22, 1996) (the term "'shall' may connote imperative obligation"). The language of the statute therefore unambiguously immunizes police officers

---

[8] The statute defines a facility as "a public or private facility for the care and treatment of mentally ill persons." Mass. Gen. L. ch. 123, § 1.

from civil liability for restraining an individual being involuntarily committed.  Indeed, as stated by the SJC, "The statutory scheme does not allow recovery by persons involuntarily *restrained* or committed."  <u>Newton-Wellesley Hosp. v. Magrini</u>, 889 N.E.2d 929, 933 n.9 (Mass. 2008) (emphasis added).

Here, the facts alleged in the complaint are that Saraiva and Costa "attempted to Section 12" Edith Koltin and tied her to a chair on October 3, 2011.  (Docket Entry # 1, p. 3).  Edith Koltin was then taken to the hospital "tied to a chair." (Docket Entry # 1, p. 4).  Such conduct on the part of Saraiva and Costa is therefore immune from liability under the plain language of Section 22.

The complaint additionally states, however, that Saraiva and Costa "trashed" the house on October 3, 2011.  Such conduct does not pertain to restraining or transporting a person within the meaning of section 22.  Accordingly, the claims in the complaint against Saraiva and Costa remain to the extent based on their conduct "trash[ing]" the house of Edith Koltin, banging on the door and their forced entry in response to the "prank swatter" call.

In the alternative, Saraiva and Costa argue that they are protected from liability under the doctrine of qualified immunity.  (Docket Entry # 13, pp. 15-17).  The qualified

immunity doctrine only applies to the section 1983 and MCRA claims against Saraiva and Costa in their individual capacities. See Anderson v. Creighton, 483 U.S. 635, 663 (1987) (qualified immunity applies to section 1983 claims); Kelly v. LaForce, 288 F.3d at 9 (qualified immunity applies to MCRA claims). "'Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)) (brackets omitted).  It does not protect public officials "who, 'from an objective standpoint, should have known that their conduct was unlawful.'" Drumgold v. Callahan, 707 F.3d 28, 42 (1st Cir. 2013) (quoting Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011)).

Overall, the doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. at 231.  It is not only a defense to liability but also a protection from suit and burdens of litigation.  Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009) (qualified immunity "is both a defense to liability and a limited 'entitlement not to stand trial or face the other

42

burdens of litigation'"); <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009).

Qualified immunity entails a two step inquiry. <u>Pearson v. Callahan</u>, 555 U.S. at 230-32; <u>see</u> <u>Maldonado v. Fontanes</u>, 568 F.3d at 269. Under this framework, the court "must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." <u>Maldonado v. Fontanes</u>, 568 F.3d at 269. At the motion to dismiss stage, the court "consider[s]: 1) whether plaintiff's allegations, taken as true, establish the violation of a constitutional right, and 2) whether the constitutional right was clearly established at the time of the challenged conduct." <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 52 (1st Cir. 2009).

In the case at bar, Saraiva and Costa argue that, as police officers, they "had a reasonable basis" to suspect Edith Koltin was "in danger" and are therefore entitled to qualified immunity. (Docket Entry # 13, p. 17) (citing <u>Hatch v. Department for Children, Youth and Their Families</u>, 274 F.3d 12 (1st Cir. 2001)). The First Circuit in <u>Hatch v. Department for Children, Youth and Their Families</u>, found that a caseworker was entitled to qualified immunity for taking a child from his parents' home because he had a reasonable basis for suspecting

43

child abuse and believing that the child was in danger.  Hatch
v. Department for Children, Youth and Their Families, 274 F.3d
at 25.  Saraiva and Costa similarly submit that, "in response to
a call from protective case workers, . . . they entered the home
without a warrant on a reasonable suspicion of elder
neglect/abuse."  (Docket Entry # 13, p. 15).  The complaint,
however, does not state that Saraiva and Costa responded to a
call from protective caseworkers.  Rather, it reads that
Kurowski and Cheney went to the home "based on a prank swatter
call" by Joann Gettings and that Saraiva and Costa arrived
shortly thereafter, banged on the door and entered the home
without a warrant.  (Docket Entry # 1, p. 3).

     Clearly established law under the Fourth Amendment in 2011
prohibited "a warrantless entry into" an individual's "home to
effect arrest or [put into] protective custody except in exigent
circumstances and with probable cause."  Buchanan ex rel. Estate
of Buchanan v. Maine, 417 F.Supp.2d 45, 61 (D.Me. 2006) (citing
Welsh v. Wisconsin, 466 U.S. 740, 749 (1984), and Payton v. New
York, 445 U.S. 573, 586 (1980)).  The facts in the complaint
fail to support a reasonable basis that exigent circumstances
existed.  Accordingly, qualified immunity does not apply at this
point in time.  Because the applicability "of the qualified
immunity doctrine should be determined at the earliest
practicable stage in the case," Cox v. Hainey, 391 F.3d 25, 29

(1st Cir. 2004), defendants are, of course, not foreclosed from
raising the doctrine in a future motion.  See generally Wilson
v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005) (qualified
immunity often raised in "either in a motion to dismiss under
Fed.R.Civ.P. 12(b)(6) or a motion for summary judgment under
Fed.R.Civ.P. 56").

   K.   Claims Against DeMello Individually

   Defendants next move to dismiss all of the claims against
DeMello because the only factual allegation against him, "taken
in the context of the other factual allegations . . . in his
complaint," does not set out any plausible cause of action
against him.  (Docket Entry # 13, pp. 17-18).  The relevant
factual allegation against DeMello in the complaint is that he
gave approval for the FRFD to break the windows to gain access
into Edith Koltin's "house, without a warrant."  (Docket Entry #
1, p. 3).

   DeMello is named as a defendant in counts I through X and
counts XVI and XVII.  With the exception of the section 1983
claim in Count I, plaintiff does not oppose or address
defendants' argument.[9]  Plaintiff therefore waives any argument

---

[9]  Plaintiff opposes dismissal of the counts alleging section
1983 claims.  Count I is the only count raising section 1983
claims.  A number of other counts raise direct claims under the
Constitution without referencing section 1983 and, as explained
elsewhere, are duplicative of the section 1983 claims in Count
I.

45

that counts II through X and counts XVI and XVII provide a basis for liability against DeMello.  See Vallejo v. Santini-Padilla, 607 F.3d at 7 & n.4; see also Coons v. Industrial Knife Co., Inc., 620 F.3d at 44.  These counts are therefore subject to dismissal as to DeMello.

With respect to Count I, the complaint states that various defendants arrived at the house "based on a prank swatter call by Defendant Joann Gettings."  (Docket Entry # 1, p. 3). Saraiva and Costa started banging on the door.  Thereafter, FRFD arrived and DeMello gave the approval to break the windows and enter the home without a warrant.  Such facts do not provide a basis to dismiss the section 1983 Fourth Amendment claim against DeMello in Count I.

L.  Constitutional Claims

As a final argument, defendants state in a single sentence that all of the "claims with regard to constitutional deprivations" are "barred by the doctrine of qualified immunity."  (Docket Entry # 13, p. 18).  The argument fails to comply with Local Rule 7.1(b)(2).  Alternatively, by not adequately presenting a basis for the argument, defendants waived the argument as a means to deny the motion to dismiss. See Vallejo v. Santini-Padilla, 607 F.3d at 7 & n.4; see also Coons v. Industrial Knife Co., Inc., 620 F.3d at 44.  As

previously stated, defendants are not foreclosed from raising

qualified immunity later in the proceedings.

II.  BES, Munson, Kurowski and Cheney's Motion to Dismiss
(Docket Entry # 15)

    A.  MCRA (Count II)

    BES, Munson, Kurowski and Cheney argue that Count II, the

MCRA claim, fails because plaintiff did not allege that they

interfered with any of decedent's state or federal civil rights

or that this was done by means of threats, intimidation or

coercion.  (Docket Entry # 16, p. 6).  Plaintiff does not

address the MCRA claim.  (Docket Entry # 51).

    In order to state an MCRA claim, plaintiff must prove that:

"'(1) his exercise or enjoyment of rights secured by the

Constitution or laws of either the United States or the

Commonwealth, (2) has been interfered with, or attempted to be

interfered with, and (3) that the interference or attempted

interference was by "'threats, intimidation or coercion.'"

Meuser v. Federal Express Corp., 564 F.3d 507, 516 (1st Cir.

2009) (quoting Bally v. Northeastern Univ., 532 N.E.2d 49, 51-52

(Mass. 1989); Mass. Gen. Laws ch. 12, § 11H.  The SJC defines

the terms "threat," "intimidation" and "coercion" as follows:

> "[t]hreat" in this context involves the intentional
> exertion of pressure to make another fearful or
> apprehensive of injury or harm . . ..  "Intimidation"
> involves putting in fear for the purpose of compelling or
> deterring conduct . . ..  In Deas v. Dempsey, 403 Mass.
> 468, 530 N.E.2d 1239, 1241 (Mass. 1988), we quoted a

47

definition of coercion from Webster's New International
Dictionary at 519 (2nd ed. 1959): "the application to
another of such force, either physical or moral, as to
constrain him to do against his will something he would not
otherwise have done."  See Delaney v. Chief of Police of
Wareham, supra ("the active domination of another's will").

Meuser v. Federal Express Corp., 564 F.3d at 516 (quoting

Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d

985, 990 (Mass. 1994)).

Here, plaintiff fails to allege that Kurowski or Cheney, or

by extension Munson or BES, subjected plaintiff's mother to

actual or potential physical harm or violated any state or

federal right.  The only fact plaintiff sets out in the

complaint is that Kurowski and Cheney arrived at the home on

October 3, 2011, and knocked on the front door.  (Docket Entry #

1, p. 3).  The complaint's subsequent allegation that

"defendants, through the use of threats, intimidation, and

coercion, interfered with Plaintiff's exercise and enjoyment of

the rights secured by the Constitution and laws of the United

States and the Commonwealth of Massachusetts" (Docket Entry # 1,

p. 6) sets out a legal conclusion that is not supported by facts

or any reasonable inference therefrom in the complaint with

respect to Kurowski and Cheney.  Count II against BES, Munson,

Kurowski and Cheney is therefore subject to dismissal.

    B.   Trespass (Count X)

48

The BES defendants next argue they are not liable for trespass because the complaint fails to allege that Kurowski and Cheney's entry was uninvited or unprivileged. (Docket Entry # 16, pp. 8-9). They point out that a trespasser is defined as a person who remains on land "'without a privilege to do so, created by the possessor's consent or otherwise.'" (Docket Entry # 16, p. 8) (quoting Gage v. City of Westfield, 532 N.E.2d 62, 70 n.8 (Mass.App.Ct. 1988)). They also contend that the plaintiff fails to plead "that the property entered by Kurowski and Cheney was [plaintiff's] property." (Docket Entry # 16, p. 8).

The Restatement (Second) of Torts, section 329 ("section 329"), which is generally followed in Massachusetts, see Gage v. City of Westfield, 532 N.E.2d at 70 n.8, provides that, "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). In order "[t]o support an action of trespass . . . it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant." New England Box Co. v. C and R Constr. Co., 49 N.E.2d 121, 128 (Mass. 1943); see Walker v. Jackson, 952 F.Supp.2d 343, 353 (D.Mass. 2013). In addition, "trespass requires an affirmative voluntary act upon the part of a wrongdoer and in that respect

49

differs from negligence." <u>United Elec. Light Co. v. Deliso</u>
<u>Constr. Co., Inc.</u>, 52 N.E.2d 553, 556 (Mass. 1943).

The facts alleged in the complaint against BES, Cheney and
Kurowski are that Cheney and Kurowski knocked on Edith Koltin's
door.  (Docket Entry # 1, p. 3).  Edith Koltin owned the house
and the complaint therefore reasonably infers she owns the
property.  Cheney and Kurowski were on the property as a result
of a "prank swatter call by Defendant Joann Gettings."  (Docket
Entry # 1, p. 3).

"Consent, in any form, is fatal to a claim for trespass."
<u>In re IDC Clambakes, Inc.</u>, 727 F.3d 58, 65 (1st Cir. 2013).
"Consent," however, "is a defense to trespass which must be
raised and proved by the defendant."  <u>McLaughlin v. Watts</u>, 1995
WL 809501, at *3 (Mass.Super. Jan. 18, 1995).  Kurowski and
Cheney's presence on the property as a result of a prank swatter
call indicates a lack of consent.  With the BES defendants
bearing the underlying burden of proof as to consent, dismissal
is not warranted in light of the facts in the complaint.

With respect to the BES defendants' second argument, "'An
action of trespass, being a possessory action, cannot be
maintained, unless the plaintiff had the actual or constructive
possession of the property trespassed upon.'"  <u>Dilbert v.</u>
<u>Hanover Ins. Co.</u>, 825 N.E.2d 1071, 1077 (Mass.App.Ct. 2005)
(quoting <u>Emerson v. Thompson</u>, 19 Mass. 473, 484 (1824), in

parenthetical) (omitting brackets).  The plaintiff "'must prove such a lawful possession of the land as the defendant has no right to disturb; but any possession is a legal possession against a wrong-doer.'"  McCarty v. Verizon New England, Inc., 731 F.Supp.2d 123, 133 (D.Mass. 2010).  "'[I]t is not necessary for the plaintiff to show a right of property.'"  Id. (emphasis omitted).  In McCarty, a paying tenant in his parents' home therefore satisfied the possession requirement with respect to a trespass claim.  Id. at 132-133.

In the case at bar, plaintiff is suing on behalf of his mother, Edith Koltin, who, as stated in the complaint, owned the house and, drawing a reasonable inference, the property at the time of the October 3, 2011 incident.  (Docket Entry # 1, p. 3). The BES defendants' argument is therefore unfounded and Count X is not subject to dismissal as to BES, Cheney and Kurowski.

C.  Slander (Count XIII), Libel (Count XIV), Defamation (Count XV) and Invasion of Privacy (Count XVI)

The complaint sets out slander, libel and defamation claims against Cheney and BES and an invasion of privacy claim against Cheney, BES and Kurowski.  (Docket Entry # 1, pp. 8-9).  As to counts XIII, XIV, XV and XVI, the BES defendants argue that plaintiff fails to allege any false statement or any true, but private, statement "'of and concerning'" Edith Koltin.  (Docket Entry # 16, p. 10).

"A defamation action, which encompasses libel and slander, affords a remedy for damage to the reputation of the injured party." HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 762 (Mass. 2013). "'Libel and slander are not . . . distinct from defamation.  Rather, they are two kinds of defamation.'" Noonan v. Staples, Inc., 707 F.Supp.2d 85, 89 (D.Mass. 2010) (quoting LeBeau v. Town of Spencer, 167 F.Supp.2d 449, 456 (D.Mass. 2001)). "The difference between these two types of defamation is that libel is a *written* defamatory statement, . . . whereas slander is defamation through *oral* communication." Noonan v. Staples, Inc., 707 F.Supp.2d at 89 (citations omitted) (emphasis in original).

In order to establish a defamation claim in Massachusetts, the plaintiff must show "that the allegedly defamatory words published by a defendant were of and concerning the plaintiff." New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 480 N.E.2d 1005, 1007 (Mass. 1985); see Driscoll v. Board of Trustees of Milton Academy, 873 N.E.2d 1177, 1189 (Mass.App.Ct. 2007).  The test articulated in New England Tractor-Trailer "poses alternative standards, the first subjective in nature and the second objective." Eyal v. Helen Broadcasting Corp., 583 N.E.2d 228, 231 (Mass. 1991).  Plaintiff must show "'either that the defendant intended its words to refer to the plaintiff and that they were so understood, *or* that

the defendant's words reasonably could be interpreted to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood.'" Id. (quoting New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 480 N.E.2d at 1012).

In the case at bar, the complaint fails to allege *any* defamatory statement, written or spoken, by Cheney or BES "of and concerning" Edith Koltin.  In fact, there is no allegation in the complaint of a statement by any of the BES defendants. Counts XIII, XIV and XV for slander, libel and defamation, respectively, are thus subject to dismissal.

Turning to the invasion of privacy claim, the BES defendants similarly contend that Cheney, BES and/or Kurowski did not publish any private facts of a highly personal nature concerning Edith Koltin.  (Docket Entry # 16, pp. 9-11).  The BES defendants submit that an invasion of privacy claim "requires proof of a publication of facts of a 'highly personal or intimate nature.'"  (Docket Entry # 16, p. 10).

Section 1B of Massachusetts General Laws chapter 214 provides that, "A person shall have a right against unreasonable, substantial or serious interference with his privacy."  Mass. Gen. L. ch. 214, § 1B.  While most cases decided under section 1B of chapter 214 have "involved public disclosure of private facts," a plaintiff may also "support a

claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion.'"  Polay v. McMahon, 10 N.E.3d 1122, 1126 (Mass. 2014).  The privacy right at issue in Polay concerned the "'right to be left alone.'"  Id. (quoting Ellis v. Safety Ins. Co., 672 N.E.2d 979, 984 (Mass.App.Ct. 1996)).  The argument that neither Cheney nor Kurowskwi made a statement or published facts of a highly personal nature therefore does not warrant a dismissal of Count XVI.

    D.  Counts XVII and XVIII

    As to Count XVII, which sets out a "claim" for actions exceeding reasonable bounds infringing on plaintiff's constitutional rights and producing serious injury and hastening and precipitating death against BES, Kurowski and Cheney, the BES defendants seek dismissal because it is not a viable or recognizable cause of action.  (Docket Entry # 16, p. 11).  They contend that the claim is simply an amalgam of the proceeding causes of action.  The claim alleges that BES, Cheney and Kurowski infringed Edith Koltin's constitutional rights by engaging in unreasonable conduct and causing her serious injury.

    As previously explained, an action for the direct violation of one or more constitutional rights is inappropriate because section 1983 provides an adequate remedy.  See Ponte v. Rodriques, 1987 WL 13245, at *3; Amiro v. Roderiques, 1987 WL

54

6985, at *2.  Here, as argued by the BES defendants, the claim
simply combines the preceding causes of action, including Count
I, into a new claim that is not viable or cognizable under
Massachusetts or federal law.  See Ponte v. Rodriques, 1987 WL
13245, at *3.  Count XVII against BES, Cheney and Kurowski is
therefore subject to dismissal.

Next, the BES defendants move to dismiss Count XVIII for
perjury against BES and Cheney because a civil claim for perjury
does not exist.  (Docket Entry # 16, p. 11).  As previously
explained, there is no civil remedy for perjury in the state of
Massachusetts.  Thus, Count XVIII is subject to dismissal
against BES and Cheney.

E.  Lack of Proper Supervision (Count XI)

Count XI sets out a claim against BES and Munson for "Lack
of Proper Supervision."  (Docket Entry # 1, p. 8).  The BES
defendants move to dismiss the claim because Kurowski and
Cheney's actions do not constitute a valid, supportable basis
for supervisory liability against BES and Munson.  (Docket Entry
# 16, p. 9).  Absent any unlawful conduct by Kurowski or Cheney,
the claim reduces to an attempt to impose liability based on
respondeat superior, according to the BES defendants.  (Docket
Entry # 16, p. 9).

Having dismissed the aforementioned claims against BES,
Munson, Cheney and/or Kurowski, Count X for trespass and Count

XVI for invasion of privacy are the only remaining claims against any BES defendant.  Contrary to plaintiff's position (Docket Entry # 51, p. 9), the BES defendants are not named in Count I, which is the count alleging violations of section 1983. As previously explained, the MCRA claim against the BES defendants in Count II is subject to dismissal.  Moreover, under the MCRA, the doctrine of respondeat superior does not apply. See Armstrong v. Lamy, 938 F.Supp. 1018, 1042 (D.Mass. 1996) (citing Lyons v. National Car Rental Systems, Inc. (of Delaware), 30 F.3d 240, 247 (1st Cir. 1994)).

With respect to the remaining claims for trespass and invasion of privacy, however, the BES defendants fail to establish that Kurowski and Cheney did not commit a trespass or an invasion of Edith Koltin's privacy, as previously discussed. In other words, they fail to establish the premise for their argument that the conduct of Kurowski and Cheney was lawful. Further, although the BES defendants maintain that BES and Munson are not liable for lack of proper supervision because Kurowski and Cheney were on the property simply to "verify that [Edith Koltin] was not in danger or [in] need of protection" (Docket Entry # 16, p. 9), the complaint does not support this "fact."  Accordingly, based on the argument presented, the lack

of proper supervision claim in Count XI is not subject to
dismissal as to BES and Munson.[10]

III.   The Gettings' Motion (Docket Entry # 20)

     A.   MCRA (Count II)

     As to Count II, the Gettings argue that the complaint does
not allege any "'threats, intimidation or coercion'" by the
Gettings that interfered with Edith Koltin's rights.  (Docket
Entry # 21, p. 4).   The MCRA claim is therefore not actionable,
according to the Gettings.  (Docket Entry # 21, p. 4).
Plaintiff does not address this argument.

     As previously discussed in part II(A), an MCRA claim
requires the plaintiff to show that the defendant used "threats,
intimidation or coercion."   Meuser v. Federal Express Corp., 564
F.3d at 516 (internal quotation marks omitted).   Here, the
complaint is devoid of any threat, intimidation or coercion on
the part of Joann or Brian Gettings within the meaning of the
MCRA.   The facts simply allege that Joann Gettings, in
collaboration with Brian Gettings, made a "prank swatter call"
to BES and that their statements to BES were false because Edith

---

[10]   In addition, at least with respect to BES, agency law may
provide a basis for liability for the torts committed by
Kurowski and Cheney within the scope of their employment.   See
generally Hohenleitner v. Quorum Health Resources, Inc., 758
N.E.2d 616, 622 (Mass. 2001); Burroughs v. Commonwealth, 673
N.E.2d 1217, 1219 (Mass. 1996) (quoting Wang Laboratories, Inc.
v. Business Incentives, Inc., 501 N.E.2d 1163, 1166 (Mass.
1986)); Restatement (Second) of Agency, § 219.

Koltin was not abandoned, there was food in the refrigerator and the Gettings had seen Edith Koltin "and her son in the backyard daily for the past several months." (Docket Entry # 1). The complaint fails to allege that the Gettings engaged in any conduct that exerted pressure on Edith Koltin, put her in fear to compel certain conduct or applied any physical or moral force to constrain her. Accordingly, Count II against the Gettings is subject to dismissal.

   B.   Slander (Count XIII), Libel (Count XIV) and Defamation (Count XV)

   The Gettings next argue that Counts XIII, XIV and XV do not survive the death of the person who is defamed (Edith Koltin) and that plaintiff fails to allege that either Joann or Brian Gettings made a statement of a defamatory nature. (Docket Entry # 21, p. 4). Plaintiff does not address the arguments.

   As previously discussed, defamation encompasses both libel for a written defamatory statement and slander for an oral defamatory statement. See Noonan v. Staples, Inc., 707 F.Supp.2d at 89. A defamatory statement must show "that the allegedly defamatory words published by a defendant were of and concerning the plaintiff." New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 480 N.E.2d at 1007; see Driscoll v. Board of Trustees of Milton Academy, 873 N.E.2d at 1189. "Words may be found to be defamatory if they hold the

plaintiff up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the community." Poland v. Post Publishing Co., 116 N.E.2d 860, 861 (Mass. 1953).

Here, the complaint states that, "Joann Gettings in collaboration with her husband," made a "prank swatter" call. (Docket Entry # 1, p. 3).  The complaint also reasonably infers that Joann Gettings made the call to BES because it states that, "apparently based on [the] prank swatter call," Kurowski and "Cheney showed up unannounced" and began knocking on Edith Koltin's door.  (Docket Entry # 1, p. 3).  The substance of Joann Gettings' oral statements during the "prank swatter call," however, is not in the complaint.  Plaintiff does not address the merits of the Gettings' argument thereby waiving any argument that the "prank swatter call" included words of a defamatory nature that held Edith Koltin up to ridicule in the community.  See Vallejo v. Santini-Padilla, 607 F.3d 1, 7 & n.4. Accordingly, the absence of an alleged written or spoken statement of a defamatory nature results in a dismissal of Count XIII for slander, Count XIV for libel, and Count XV for defamation against the Gettings.[11]

C.  Actions Exceeding Reasonable Bounds, Infringing on Plaintiff's Constitutional Rights and Producing Serious Injury and Hastening and Precipitating Death (Count XVII)

---

[11]  It is therefore not necessary to address the Gettings' alternative argument to dismiss these counts.

The Gettings next argue that Count XVII does not set out a
cause of action that actually exists.  (Docket Entry # 21, p.
5).  As previously stated, an action for the direct violation of
one or more constitutional rights is inappropriate because
section 1983 provides an adequate remedy.  See Ponte v.
Rodriques, 1987 WL 13245, at *3.  Here, as argued by the
Gettings and for reasons previously discussed, the claim is not
cognizable under Massachusetts or federal law.  Count XVII
against the Gettings is therefore subject to dismissal.

   D. Perjury (Count XVIII)

   Finally, the Gettings argue that there is no civil cause of
action for perjury and therefore Count XVIII must be dismissed.
(Docket Entry # 21, pp. 5-6).  For reasons previously stated,
they are correct.  Therefore, Count XVIII is subject to
dismissal as to the Gettings.

CONCLUSION

   In accordance with the foregoing discussion, this court
**RECCOMMENDS**[12] defendants' motion to dismiss (Docket Entry # 12)
be **ALLOWED** as to: (1) the section 1983 claim (Count I) and the

---

[12]  Any objection to this Report and Recommendation must be filed
with the Clerk of Court within 14 days of receipt of the Report
and Recommendation to which objection is made and the basis for
such objection.  See Fed.R.Civ.P. 72(b).  Any party may respond
to another party's objection within 14 days after service of the
objections.  Failure to file objections within the specified
time waives the right to appeal the order.

MCRA claim (Count II) against the City, FRPD and FRFD; (2) the
section 1983 claim (Count I) and MCRA claim (Count II) against
defendant officers, Flanagan, Dufour and Biszko in their
official capacities; (3) counts III, IV, VIII and XVII; (4) the
intentional tort claims (counts V, VI and X) against the City,
FRFD and FRPD as well as against Flanagan, the defendant
officers, Dufour and Biszko in their official capacities; (5)
all of the counts against DeMello except for Count I; (6) Count
XVI; (7) Count XVIII as it applies to Saraiva, Costa and Burke;
(8) all claims against Saraiva and Costa based on their conduct
in attempting "to Section 12" Edith Koltin and restrain her by
tying her to a chair based on their immunity under section 22;[13]
and (9) all of the claims against Dufour without prejudice.  It
is further **RECOMMENDED**[14] that the motion be **DENIED** as to Count
VII, IX and XI.

---

[13]  As previously explained, Saraiva and Costa remain liable with
respect to other conduct.
[14]  See footnote 12.  Within two weeks of a ruling on this Report
and Recommendation under 28 U.S.C. § 636 (b)(1) by the court,
plaintiff shall file a proposed amended complaint that sets out
the exact same facts as the complaint but, with respect to each
remaining count, accurately sets out the remaining defendants
and the remaining capacity in which they are sued in accordance
with the rulings by the court.  Plaintiff shall confer with
opposing counsel and attempt to secure their agreement to the
proposed amended complaint.

This court **RECOMMENDS**[15] that the defendant BES defendants' motion to dismiss (Docket Entry # 15) be **ALLOWED** as to counts II, XVIII, XIV, XV, XVII and XVIII and **DENIED** as to counts X, XI and XVI.   Finally, this court **RECOMMENDS**[16] that the Gettings' motion to dismiss (Docket Entry # 20) be **ALLOWED.**

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[15]   See footnotes 12 and 14.

[16]   See footnotes 12 and 14.